NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

SAN JOSE DIVISION

| | |
|---|---|
| EQUILON ENTERPRISES LLC, a Delaware Corporation, d/b/a SHELL OIL PRODUCTS US,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>MEHDI SHAHBAZI, et al.,<br><br>　　　　　Defendants. | Case Number C 05-5102 JF<br><br>ORDER[1] DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION<br><br>[re: docket no. 3] |

**I.  BACKGROUND**

　　Plaintiff Equilon Enterprises LLC ("Equilon") was formed in 1998 as a result of a business combination between Shell Oil Company and Texaco, Inc.  As a result, Equilon succeeded to all of Shell's rights and obligations under a number of fuel supply agreements and station leases.  Equilon now does business as Shell Oil Products US ("Shell").  Complaint, ¶ 8.

　　Defendant Mehdi Shahbazi ("Shahbazi") has maintained a Shell gasoline station at 3030 Del Monte Avenue in Marina, California ("Marina station"), as a franchisee since 1982. Declaration of Mehdi Shahbazi in Support of Defendants' Opposition to Equilon's Motion for

---

　　[1]　　This disposition is not designated for publication and may not be cited.

Preliminary Injunction ("Shahbazi Decl."), ¶ 2.  Shahbazi and Defendant Balwinder Singh ("Singh") have maintained a Shell gasoline station at 417 North Main Street in Salinas, California ("Salinas station"), as a franchisee since 1994.[2]  *Id.*, ¶ 3.

On February 21, 2001, Shahbazi and Equilon entered into a renewal station lease agreement and a renewal fuel supply agreement for the Marina station.  Declaration of James K. Eaves ("Eaves Decl."), Exs. A and C.  Both agreements ran through February 29, 2004.  *Id.*  In January, 2002, Equilon assigned its interest to Peninsula Petroleum LLC ("Peninsula"), a gasoline distributor.  *Id.*, ¶ 2.  However, Equilon did not assign the Marina station lease to Peninsula.  *Id.*

On November 7, 2003, Peninsula and Shahbazi entered into a Retail Sales Agreement ("Marina RSA"), a fuel supply agreement governing the Marina station.  Declaration of M.J. Castelo ("Castelo Decl."), Ex. A.  The Marina RSA required that Peninsula supply Shahbazi with Shell gasoline and permitted Shahbazi to use Equilon's Shell "trademarks, trade dress, service marks and color schemes" ("Shell trademarks").  *Id.*  On or about April 30, 2004, Shahbazi and Equilon entered into a new lease ("Marina lease") granting Shahbazi the right to lease the Marina station property from Equilon, with an expiration date of April 30, 2007.  Eaves Decl., Ex. C.

The Marina RSA provides that Shahbazi must "preserve and promote the reputation of [Peninsula]" and must take steps to "achieve public acceptance of" Shell gasoline.  Castelo Decl., Ex. A, ¶ 7.  The Marina RSA permits Shahbazi to display signs necessary to identify the Shell gasoline for sale and its price.  *Id.*, ¶ 7(p).  However, the Marina RSA requires that Shabazi "shall not display or use any other signs, posters, flags, pennants, or other advertising devices without [Peninsula's] prior written approval."  *Id.*  The Marina RSA also provides that Peninsula

---

[2]  Equilon notes that, "[w]hile Equilon's complaint names two defendants, Shahbazi and [Singh], Equilon's preliminary injunction motion was brought only against Shahbazi, since he is the only one of those two defendants who operates the Marina Station, the occupancy of which is the subject of this motion.  For reasons unknown to Equilon, the opposition to the preliminary injunction motion was filed on behalf of both Shahbazi and [Singh]."  Supplemental Reply Brief ("Supp. Reply") at 1 n.1.  On April 12, 2006, the claim against Shahbazi and Singh with respect to the Salinas station and Singh's counterclaims were dismissed voluntarily.

1  may terminate the agreement for Shahbazi's "failure to comply with any provision of the
2  Agreement, which provision is both reasonable and of material significance to the relationship."
3  *Id.*, ¶ 23(a)(1).

4       The Marina lease provides that Shahbazi "shall devote [his] reasonable efforts to preserve
5  the value of the Premises . . . and the reputation of [Equilon] by serving effectively and
6  efficiently the needs of the public and consumers." Eaves Decl., Ex. C, ¶ 5.  The Marina lease
7  also states that Equilon "may terminate this Lease [for Shahbazi's] failure to comply with any
8  provision of this Lease, which provision is both reasonable and of material significance to the
9  relationship under the Lease," or upon the termination of the Marina RSA.  *Id.*, ¶¶ 18(a)(1),
10 18(a)(5).  The Marina lease further provides that "[u]pon termination or nonrenewal of this
11 Lease, [Shahbazi] shall peaceably surrender the Premises to [Equilon]."  *Id.*, ¶ 19(a)).

12      In September, 2005, after the gasoline price increases following Hurricane Katrina,
13 Shahbazi posted two signs at the Marina station near the primary Shell sign.  Shahbazi Decl., ¶¶
14 4, 11-12; Castelo Decl., ¶ 6.  Shahbazi's first sign read, "CONSUMERS' PAIN IS BIG OIL'S
15 <u>UNEARNED PROFIT!</u>  TO OPPOSE IT SEE CASHIER[.]" Castelo Decl., Ex. C.  His second
16 sign read, "BIG OILS ARE PRICE GOUGING AND PROFITEERING!  TO PARTICIPATE IN
17 ROLL BACK SEE CASHIER[.]"  *Id.*, Exs. D and E.  Shahbazi also stacked a newspaper rack at
18 the Marina station with copies of a two-page letter, which included the following statement in its
19 title: "'CONSUMER ALERT' OUTRAGEOUS GOUGING BY ALL OIL COMPANIES RIP-
20 OFF IN ACTION ACROSS THE NATION <u>DO NOT BLAME THE OPERATOR OF YOUR</u>
21 <u>NEIGHBORHOOD STATION</u>[.]" Declaration of Mark Kassebaum, ¶ 3 and Ex. B.  The letter
22 advised customers to "stop buying form [sic] 'Company stores' or from large distributor sites
23 stations where [it] is possible until prices go down to a fair market value."  *Id.*, Ex. B.  Shahbazi
24 stated that his motivation behind these actions was that "if the public boycotted company-owned
25 stations, it would drive the price of fuel down which would be a benefit to the public."  Shahbazi
26 Decl., ¶ 13.  Shahbazi's intention was "to inform the public that [it was not he who was] causing
27 the unprecedented price increases and it was not [he] who was pocketing the profit" because "[i]t
28 is no one but [he] who faces an angry public on a daily basis when unjustified and unprecedented

3

1  price[] increases are set forth, not the brand."[3] *Id.*, ¶¶ 11, 14.

2  On November 1, 2005, according to Shahbazi, Equilon "enclosed all of the gasoline
3  dispensers with a chain link fence because Shell was going to do 'environmental upgrades' . . . ."
4  *Id.*, ¶ 10. A Shell representative, Jim Martin, told Shahbazi that the upgrades were going to take
5  three to four weeks. *Id.* On or about November 7, 2005, the upgrade work started. *Id.*
6  However, within a few days Shahbazi was informed that the work had stopped and the fence
7  around the dispensers would remain. *Id.* The fence around the gasoline dispensers still is in
8  place and Shahbazi is able only to sell items from the convenience store. *Id.*, ¶ 16.

9  On November 7, 2005, Peninsula sent Shahbazi a letter demanding that he stop
10 displaying the two signs and stop distributing the letters. Castelo Decl., ¶ 7, Ex. F. On
11 November 14, 2005, Peninsula sent Shahbazi a notice of termination. *Id.*, ¶ 8, Ex. G. The notice
12 stated that effective November 24, 2005, Peninsula would terminate the Marina RSA because
13 Shahbazi had "not removed the signs in violation of the Agreement." *Id.* On November 17,
14 2005, Equilon sent Shahbazi a similar notice terminating the Marina lease effective November
15 24, 2005, based on Peninsula's termination of the Marina RSA and Shahbazi's failure to remove
16 the signs. Eaves Decl., Ex. D. The notice further instructed Shahbazi to vacate the Marina
17 station premises. *Id.* On November 21, 2005, Shahbazi wrote to Equilon stating that he
18 "absolutely" would not vacate the Marina station. *Id.*, Ex. F. On November 22, 2005, Shahbazi
19 removed the signs. Shahbazi Decl., ¶ 12.[4]

20 _____

21  [3]  Shahbazi notes that, because of high gasoline prices, "I could see no alternative
22 but to bring some awareness to consumers, based on my years of experience of the oil industry I
made up the informative flyers . . . to inform the helpless consumers to take control of [the]
23 situation. . . . And as the Katrina [hurricane] hit and [the] situation was getting worse I made
professional signs, place[d] it where the consumers could see it. Neither the flyers nor the signs
24 named any oil companies in particular Shell, Equilon, or Peninsula by name." Declaration of
Shahbazi in Opposition of Equilon's Motion for Preliminary Injunction ("Second Shahbazi
25 Decl."), ¶ 28.

26  [4]  According to Equilon, on January 26, 2006, Shahbazi re-posted the signs for the
27 newspaper article, "Squeezed at the Pump. Shell sues Marina Gas Station Operator Over Anti-
Gouging Signs" in "The Monterey County Weekly." Declaration of Colin C. West, ¶ 2. A
28 photograph shows Shahbazi standing in front of the fenced up gasoline dispensers with both

4

On December 9, 2005, Equilon filed a complaint against Shahbazi and Singh, seeking: (1) declaratory relief regrading the Marina RSA and Marina lease; (2) declaratory relief regarding the Salinas RSA and the Salinas lease;[5] and (3) injunctive relief. On December 12, 2005, Equilon filed a motion for a preliminary injunction that would require that Shahbazi: (1) surrender and vacate the Marina station to Equilon, and enjoining Shahbazi from remaining on or re-entering the Marina station; (2) return to Equilon all of Equilon's equipment, fixtures, and other property located at the Marina station; and (3) remove all of his personal property and equipment located at the Marina station. Shahbazi opposes the motion for preliminary injunction. The Court heard oral argument on February 10, 2006.

On May 8, 2006, following unsuccessful settlement negotiations, Equilon filed a supplemental brief in support of its motion for preliminary injunction. Equilon submitted a copy of an article in the "Monterey County Weekly," describing the conflict between Equilon and Shahbazi. Equilon states that it is concerned that the article notes that "the Shahbazi's [sic] hint that they'll leave the gas station for a fair price." Equilon's Supplemental Brief, Ex. A.

## II. Discussion

A party seeking a preliminary injunction must show either (1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and the balance of hardships tipping in the movant's favor. *See, e.g., Roe v. Anderson*, 134 F.3d 1400, 1401-02 (9th Cir. 1998); *Apple Computer, Inc. v. Formula Int'l, Inc.*, 725 F.2d 521, 523 (9th Cir. 1984). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Roe*, 134 F.3d at 1402. "If the balance of harm tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likelihood of success on the merits as when the

---

signs displayed. *Id.*, Ex. A.

[5] Although addressed in the complaint, the Salinas station agreements are not at issue in the instant motion for a preliminary injunction.

1  balance tips less decidedly." *Alaska v. Native Vill. of Venetie*, 856 F.2d 1384, 1389 (9th Cir.
2  1988). A showing of likely success on the merits gives rise to a presumption of irreparable harm
3  in trademark cases. *Int'l Jenson, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 827 (9th Cir.
4  1993). "A preliminary injunction is a provisional remedy, the purpose of which is to preserve
5  status quo and to prevent irreparable loss of rights prior to final disposition of the litigation."
6  *Napa Valley Publi'g Co. v. City of Calistoga*, 225 F.Supp.2d 1176, 1180 (N.D. Cal. 2002) (citing
7  *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).

8        It is unclear whether Equilon will succeed on the merits. First, Shahbazi makes the
9  potentially meritorious argument that neither Peninsula nor Equilon gave him sufficient notice of
10 termination. Section 2804(a) of the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. §
11 2801 *et seq.*, requires that "[p]rior to termination of any franchise or nonrenewal of any franchise
12 relationship, the franchisor shall furnish notification of such termination or such nonrenewal to
13 the franchisee . . . not less than 90 days prior to the date on which such termination or
14 nonrenewal takes effect." 15 U.S.C.A. § 2804(a). Additionally, "[i]n circumstances in which it
15 would not be reasonable for the franchisor to furnish notification, not less than 90 days prior to
16 the date on which termination or nonrenewal takes effect . . . such franchisor shall furnish
17 notification to the franchisee affected thereby on the earliest date on which furnishing of such
18 notification is *reasonably practicable*[.]" 15 U.S.C.A. § 2804(b)(1) (emphasis added).

19       In the instant case, Peninsula sent Shahbazi a notice of termination on November 14,
20 2005, effective November 24, 2005. Castelo Decl., ¶ 8 and Ex. G. On November 17, 2005,
21 Equilon sent Shahbazi a similar notice terminating the Marina lease on November 17, 2005,
22 effective November 24, 2005. Eaves Decl., Ex. D. Peninsula thus gave Shahbazi ten days'
23 notice of termination, while Equilon gave Shahbazi eight days' notice of termination. Neither
24 notice satisfied the ninety-day notice requirement of Section 2804(a). It is unclear from the
25 present record whether it was reasonable for both Peninsula and Equilon to give less than ninety
26 days' notice or whether Equilon and Peninsula gave notice on the first day reasonably
27 practicable.

28       Second, Shahbazi makes the potentially meritorious argument that termination of his

franchise was impermissible under Section 2802(b)(2)(A) of the PMPA. Section 2802(b)(2)(A) of the PMPA states that termination of a franchise is permitted when there is "[a] failure by the franchisee to comply with any provision of the franchise, which provision is both *reasonable* and of *material significance* to the franchise relationship . . . ." 15 U.S.C.A. § 2802(b)(2)(A) (emphasis added). On the surface it appears that Shahbazi failed to follow provisions in both the Marina RSA and the Marina lease: he failed to follow the provisions in the Marina RSA requiring him to "preserve and promote the reputation of [Peninsula,]" must take steps to "achieve public acceptance of" Shell gasoline, and "shall not display or use any other signs, posters, flags, pennants, or other advertising devices without [Peninsula's] prior written approval." Castelo Decl., Ex. A, ¶¶ 7, 7(p). It also appears that Shahbazi failed to follow the provision in the Marina lease stating that Shahbazi "shall devote [his] reasonable efforts to preserve the value of the Premises . . . and the reputation of [Equilon] by serving effectively and efficiently the needs of the public and consumers." Eaves Decl., Ex. C, ¶ 5. However, serious questions on the merits remain as to whether these provisions were both reasonable and of material importance to the franchise relationship in the specific factual setting presented here.

Moreover, the Court concludes that Equilon has not demonstrated the possibility of irreparable injury. Equilon asserts that "Shahbazi's continuing occupation of the Marina Station despite having no fuel or motor fuel products to sell" and displaying Shell's trademarks would damage its reputation and cause irreparable injury if the Court does not grant preliminary injunction. Complaint, ¶ 60. While Equilon's goodwill is unique and worth preserving, "the 'overriding purpose of Title I of the PMPA is to protect the franchisee's reasonable expectation of continuing the franchise relationship." *Mustang Marketing, Inc. v. Chevron Prods. Co.*, 406 F.3d 600, 607 (9th Cir. 2005) (quoting *Unocal Corp. v. Kaabipour*, 177 F.3d 755, 762 (9th Cir. 1999)).

In comparison, Shahbazi has demonstrated that he could suffer irreparable injury if the Court granted the instant motion for a preliminary injunction. "The purpose of the PMPA includes protecting a franchisee who has built up substantial goodwill in a station from having his or her franchise arbitrarily taken from him or her." *BP W. Coast Prods. v. May*, 347

1   F.Supp.2d 898, 903 (D. Nev. 2004). Shahbazi has maintained the Marina station since 1982.
2   Shahbazi Decl., ¶ 2. Shahbazi states that "[t]he service station businesses are [his] family's sole
3   means of support. If my franchises were terminated during the pendency of this litigation before
4   I have had a chance to challenge Equilon's and Peninsula's termination, I will lose the good will
5   value of the franchises that I have built up over the last twenty-four (24) years, and would not be
6   able to recover that back." *Id.*, ¶ 21. Shahbazi continues, "[i]n addition to loss of good will, the
7   loss of the supply agreements while this action is in litigation will cause myself and my family
8   irreparable harm as we will lose our sole means of support." *Id.*, ¶22. The balance of hardships
9   weighs in Shahbazi's favor. *See Topanga Press, Inc. v. City of Los Angeles*, 989 F.2d 1524,
10  1528 (9th Cir. 1993) (holding that a party need not show irreparable harm if he "will suffer a
11  degree of hardship that outweighs the hardship facing the opposing party if the injunction is not
12  issued"). Accordingly, Equilon's motion for a preliminary injunction will be denied.

### III. ORDER

Good cause therefore appearing, IT IS HEREBY ORDERED Equilon's motion for preliminary injunction is DENIED.

DATED: June 1, 2006

_____
JEREMY FOGEL
United States District Judge

8

Case No. C 05-5102 JF
ORDER DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION
(JFEX1)

1   This Order has been served upon the following persons:

2   Kristen A. Palumbo          kristen.palumbo@bingham.com

3   James Severson              james.severson@bingham.com

4   Colin C. West               colin.west@bingham.com

5

6   Colin C. West, James Severson & Kristen A. Palumbo
    Bingham McCutchen LLP
7   Three Embarcadero Center, Suite 1800
    San Francisco, CA 94111

8   Mehdi Shahbazi
    3030 Del Monte Blvd.,
9   Marina, Ca 93933

10  Balwinder Singh
    3030 Del Monte Blvd.,
11  Marina, Ca 93933

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9

Case No. C 05-5102 JF
ORDER DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION
(JFEX1)