**Original filed 9/25/06**

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| EQUILON ENTERPRISES LLC, a Delaware Corporation, d/b/a SHELL OIL PRODUCTS US,<br><br>Plaintiff,<br><br>v.<br><br>MEHDI SHAHBAZI, et al.,<br><br>Defendants. | Case Number C 05-05102 JF<br><br>ORDER[1] GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT AND REFERRING PARTIES TO MAGISTRATE JUDGE SEEBORG FOR SETTLEMENT CONFERENCE<br><br>[re: docket no. 51] |

Plaintiff Equilon Enterprises LLC ("Equilon") moves for leave to file an amended complaint. Defendant Mehdi Shahbazi ("Shahbazi") opposes the motion. The Court heard oral argument on September 15, 2006. For the reasons set forth below, the motion will be granted. The parties will be referred to Magistrate Judge Seeborg for a settlement conference.

**I. BACKGROUND**

Equilon was formed in 1998 as a result of a business combination between Shell Oil Company and Texaco, Inc. Complaint, ¶ 8. As a result, Equilon succeeded to all of Shell's

---

[1] This disposition is not designated for publication and may not be cited.

Case No. C 05-05102 JF
ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT AND REFERRING PARTIES TO MAGISTRATE JUDGE SEEBORG FOR SETTLEMENT CONFERENCE
(JFEX1)

rights and obligations under a number of fuel supply agreements and station leases. *Id.* Equilon now does business as Shell Oil Products US ("Shell"). *Id.*, ¶ 8.

Shahbazi has maintained a Shell gasoline station at 3030 Del Monte Avenue in Marina, California ("Marina station"), as a franchisee since 1982. Declaration of Mehdi Shahbazi in Support of Defendants' Opposition to Equilon's Motion for Preliminary Injunction ("Shahbazi Decl."), ¶ 2. Shahbazi and Defendant Balwinder Singh ("Singh") also have maintained a Shell gasoline station at 417 North Main Street in Salinas, California ("Salinas station"), as franchisees since 1994. *Id.*, ¶ 3.

On February 21, 2001, Shahbazi and Equilon entered into a renewal station lease agreement and a renewal fuel supply agreement for the Marina station. Declaration of James K. Eaves ("Eaves Decl."), Exs. A and C. Both agreements ran through February 29, 2004. *Id.* In January, 2002, Equilon assigned its interest to Peninsula Petroleum LLC ("Peninsula"), a gasoline distributor. *Id.*, ¶ 2. However, Equilon did not assign the Marina station lease to Peninsula. *Id.*

On November 7, 2003, Peninsula and Shahbazi entered into a Retail Sales Agreement ("Marina RSA"), a fuel supply agreement governing the Marina station. Declaration of M.J. Castelo ("Castelo Decl."), Ex. A. The Marina RSA required that Peninsula supply Shahbazi with Shell gasoline and permitted Shahbazi to use Equilon's Shell "trademarks, trade dress, service marks and color schemes" ("Shell trademarks"). *Id.* On or about April 30, 2004, Shahbazi and Equilon entered into a new lease ("Marina lease") granting Shahbazi the right to lease the Marina station property from Equilon, with an expiration date of April 30, 2007. Eaves Decl., Ex. C.

The Marina RSA provides that Shahbazi must "preserve and promote the reputation of [Peninsula]" and must take steps to "achieve public acceptance of" Shell gasoline. Castelo Decl., Ex. A, ¶ 7. The Marina RSA permits Shahbazi to display signs necessary to identify the Shell gasoline for sale and its price. *Id.*, ¶ 7(p). However, the Marina RSA requires that Shabazi "shall not display or use any other signs, posters, flags, pennants, or other advertising devices without [Peninsula's] prior written approval." *Id.* The Marina RSA also provides that Peninsula

2

1  may terminate the agreement for Shahbazi's "failure to comply with any provision of the
2  Agreement, which provision is both reasonable and of material significance to the relationship."
3  *Id.*, ¶ 23(a)(1).
4      The Marina lease provides that Shahbazi "shall devote [his] reasonable efforts to preserve
5  the value of the Premises . . . and the reputation of [Equilon] by serving effectively and
6  efficiently the needs of the public and consumers." Eaves Decl., Ex. C, ¶ 5. The Marina lease
7  also states that Equilon "may terminate this Lease [for Shahbazi's] failure to comply with any
8  provision of this Lease, which provision is both reasonable and of material significance to the
9  relationship under the Lease," or upon the termination of the Marina RSA. *Id.*, ¶¶ 18(a)(1),
10 18(a)(5). The Marina lease further provides that "[u]pon termination or nonrenewal of this
11 Lease, [Shahbazi] shall peaceably surrender the Premises to [Equilon]." *Id.*, ¶ 19(a)).
12     In September, 2005, after the gasoline price increases following Hurricane Katrina,
13 Shahbazi posted two signs at the Marina station near the primary Shell sign. Shahbazi Decl., ¶¶
14 4, 11-12; Castelo Decl., ¶ 6. Shahbazi's first sign read, "CONSUMERS' PAIN IS BIG OIL'S
15 UNEARNED PROFIT! TO OPPOSE IT SEE CASHIER[.]" Castelo Decl., Ex. C. His second
16 sign read, "BIG OILS ARE PRICE GOUGING AND PROFITEERING! TO PARTICIPATE IN
17 ROLL BACK SEE CASHIER[.]" *Id.*, Exs. D and E. Shahbazi also stacked a newspaper rack at
18 the Marina station with copies of a two-page letter, which included the following statement in its
19 title: "'CONSUMER ALERT' OUTRAGEOUS GOUGING BY ALL OIL COMPANIES RIP-
20 OFF IN ACTION ACROSS THE NATION DO NOT BLAME THE OPERATOR OF YOUR
21 NEIGHBORHOOD STATION[.]" Declaration of Mark Kassebaum, ¶ 3 and Ex. B. The letter
22 advised customers to "stop buying form [sic] 'Company stores' or from large distributor sites
23 stations where [it] is possible until prices go down to a fair market value." *Id.*, Ex. B. Shahbazi
24 stated that his motivation behind these actions was that "if the public boycotted company-owned
25 stations, it would drive the price of fuel down which would be a benefit to the public." Shahbazi
26 Decl., ¶ 13. Shahbazi's intention was "to inform the public that [it was not he who was] causing
27 the unprecedented price increases and it was not [he] who was pocketing the profit" because "[i]t
28

is no one but [he] who faces an angry public on a daily basis when unjustified and unprecedented price[] increases are set forth, not the brand."[2] *Id.*, ¶¶ 11, 14.

On November 1, 2005, according to Shahbazi, Equilon "enclosed all of the gasoline dispensers with a chain link fence because Shell was going to do 'environmental upgrades' . . . ." *Id.*, ¶ 10. A Shell representative, Jim Martin, told Shahbazi that the upgrades were going to take three to four weeks. *Id.* On or about November 7, 2005, the upgrade work started. *Id.* However, within a few days Shahbazi was informed that the work had stopped and the fence around the dispensers would remain. *Id.* The fence around the gasoline dispensers is still in place and Shahbazi is able only to sell items from the convenience store. *Id.*, ¶ 16.

On November 7, 2005, Peninsula sent Shahbazi a letter demanding that he stop displaying the two signs and stop distributing the letters. Castelo Decl., ¶ 7 and Ex. F.  On November 14, 2005, Peninsula sent Shahbazi a notice of termination. *Id.*, ¶ 8 and Ex. G.  The notice stated that effective November 24, 2005, Peninsula would terminate the Marina RSA because Shahbazi had "not removed the signs in violation of the Agreement." *Id.*  On November 17, 2005, Equilon sent Shahbazi a similar notice terminating the Marina lease effective November 24, 2005, based on Peninsula's termination of the Marina RSA and Shahbazi's failure to remove the signs. Eaves Decl., Ex. D.  The notice further instructed Shahbazi to vacate the Marina station premises. *Id.*  On November 21, 2005, Shahbazi wrote to Equilon stating that he "absolutely" would not vacate the Marina station. *Id.*, Ex. F.  On November 22, 2005, Shahbazi

---

[2] Shahbazi asserts that, because of high gasoline prices, "I could see no alternative but to bring some awareness to consumers, based on my years of experience of the oil industry I made up the informative flyers . . . to inform the helpless consumers to take control of [the] situation. . . . And as the Katrina [hurricane] hit and [the] situation was getting worse I made professional signs, place[d] it where the consumers could see it. Neither the flyers nor the signs named any oil companies in particular Shell, Equilon, or Peninsula by name." Declaration of Shahbazi in Opposition of Equilon's Motion for Preliminary Injunction ("Second Shahbazi Decl."), ¶ 28.

4

Case No. C 05-05102 JF
ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT AND
REFERRING PARTIES TO MAGISTRATE JUDGE SEEBORG FOR SETTLEMENT CONFERENCE
(JFEX1)

removed the signs. Shahbazi Decl., ¶ 12.[3]

On December 9, 2005, Equilon filed a complaint against Shahbazi and Singh, seeking: (1) declaratory relief regarding the Marina RSA and Marina lease; (2) declaratory relief regarding the Salinas RSA and the Salinas lease; and (3) injunctive relief. On December 12, 2005, Equilon filed a motion for a preliminary injunction that would require, among other things, that Shahbazi surrender and vacate the Marina station to Equilon.

On December 28, 2005 the undersigned judge issued a Related Case Order finding that the current case, originally assigned to Judge James Ware is related to a prior case that had been assigned to the undersigned judge.[4] On April 13, 2006, the parties stipulated to the dismissal of the claims against Shahbazi and Singh regarding the Salinas lease agreement and the Salinas RSA. The parties further stipulated to the dismissal of all counterclaims asserted by Singh against Equilon. On June 1, 2006 this Court issued an order denying Equilon's motion for preliminary injunction.[5] On July 7, 2006, Equilon filed a motion for leave to file a First Amended Complaint ("FAC"). The proposed FAC removes from the action all claims regarding the Salinas station and its lease and RSA agreements, thereby also removing Singh. West Decl., Ex. A. The FAC asserts three new claims for relief against Shahbazi including (1) breach of contract regarding the Marina lease, (2) breach of contract regarding the Marina RSA, and (3) trespass. *Id.*

---

[3] According to Equilon, on January 26, 2006, Shahbazi re-posted the signs for the newspaper article, "Squeezed at the Pump. Shell sues Marina Gas Station Operator Over Anti-Gouging Signs" in "The Monterey County Weekly." Declaration of Colin C. West ("West Decl.), ¶ 2. A photograph shows Shahbazi standing in front of the fenced up gasoline dispensers with both signs displayed. *Id.*, Ex. A.

[4] The prior case, 03-00212 JF, *Shahbazi, et al. v. Equilon Enterprises LLC, et al.*, alleging violation of the federal Petroleum Marketing Practice Act, resulted in summary judgment for defendant Equilon. Shahbazi's additional state law claim was then dismissed pursuant to 28 U.S.C. § 1367(c)(3).

[5] Equilon filed another motion for preliminary injunction on July 7, 2006 and then withdrew this motion on August 29, 2006.

5

Case No. C 05-05102 JF
ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT AND REFERRING PARTIES TO MAGISTRATE JUDGE SEEBORG FOR SETTLEMENT CONFERENCE
(JFEX1)

## II. DISCUSSION

Motions for leave to amend are governed by Federal Rule of Civil Procedure 15(a), which provides that "leave shall be freely given when justice so requires." In deciding whether to grant leave to amend, the Court will consider several factors, including: (1) undue delay by the party seeking the amendment; (2) prejudice to the opposing party; (3) bad faith; (4) futility of amendment; and (5) whether the party previously has amended its pleadings. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). The Court has discretion in deciding whether to grant leave to amend, but it "'must be guided by the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities.'" *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)). Generally, the policy of granting leave to amend is to be applied with extreme liberality. *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990); *see also Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999) (noting that inferences should be drawn "in favor of granting the motion").

Equilon requests leave to amend its complaint to add three new claims that involve the same facts already at issue in this litigation. Shahbazi argues that these three claims are duplicate claims that were pleaded previously and that Equilon's FAC is a duplicate complaint.[6] The Court concludes that, although the new claims are based on *facts* that were pleaded previously in the original complaint, the *claims* are indeed new. No unfair prejudice exists simply because a party has to defend against new or better pleaded claims. *See Poling v. Morgan*, 829 F.2d 882, 886 (9th Cir. 1987) (holding that the court abused its discretion in denying a motion to amend where

---

[6] Shahbazi's opposition is contained in a document filed September 1, 2006, entitled "Answers and Affirmative Defenses and Response to Equilon Motion for Leave to File First Amended Complaint, Proposed First Amended Complaint for Declaratory Relief, Injunction Relief, and Damages." It may be useful for Shahbazi to note that his answers and affirmative defenses may be filed after Equilon files its FAC pursuant to this Order. Shahbzi also filed a document on September 1, 2006, entitled "Declaration of Mehdi C. Shahbazi in Opposition of Equilon Motion for Leave to File First Amended Complaint." This declaration does not directly address the motion at issue in this case. Shahbazi is respectfully reminded that previously litigated matters are not at issue in this proceeding.

the underlying facts regarding the new claim were pleaded in the initial complaint).

Shahbazi argues that this motion is being filed as a form of retaliation against him, thus implying that the motion is brought in bad faith. Bad faith often is another aspect of undue delay. *See Swanson v. Babbitt*, 3 F.3d 1348, 1354 (9th Cir. 1993) (noting that a deliberate design to delay constitutes bad faith); *see also United States v. Beamon*, 992 F.2d 1009, 1013 (9th Cir. 1993) (noting that in cases of bad faith, the reasons for delay may well control). In the instant case, however, Equilon has not delayed unduly in filing its motion to amend. Equilon's amendments reflect the changes that have occurred in this case since it filed its complaint in December, 2005, including the parties' stipulated dismissal of claims, counterclaims and a party. Discovery remains open and no status conferences have occurred. There is no evidence that Equilon has acted in bad faith. Accordingly, given the very liberal standard for motions for leave to amend and the absence of notable prejudice to Shahbazi, the Court will grant the instant motion. In addition, consistent with its comments during oral argument, the Court will refer the parties are referred to Magistrate Judge Seeborg for renewed efforts to settle their dispute.

### IV. ORDER

Good cause therefore appearing, IT IS HEREBY ORDERED that the instant motion for leave to file a first amended complaint is GRANTED. The parties are referred to Magistrate Judge Seeborg for a settlement conference.

DATED: September 22, 2006

_____
JEREMY FOGEL
United States District Judge

7

Case No. C 05-05102 JF
ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT AND REFERRING PARTIES TO MAGISTRATE JUDGE SEEBORG FOR SETTLEMENT CONFERENCE
(JFEX1)

1  This Order has been served upon the following persons:

3  Kristen A. Palumbo   kristen.palumbo@bingham.com

4  James Severson   james.severson@bingham.com

6  Colin C. West   colin.west@bingham.com

8  Mehdi Shahbazi
   3030 Del Monte Blvd.,
   Marina, Ca 93933

10 Balwinder Singh
   3030 Del Monte Blvd.,
   Marina, Ca 93933

8

Case No. C 05-05102 JF
ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT AND
REFERRING PARTIES TO MAGISTRATE JUDGE SEEBORG FOR SETTLEMENT CONFERENCE
(JFEX1)

Case No. C 05-05102 JF
ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT AND REFERRING PARTIES TO MAGISTRATE JUDGE SEEBORG FOR SETTLEMENT CONFERENCE
(JFEX1)