**E-Filed 8/30/2007**

NOT FOR CITATION

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| EQUILON ENTERPRISES LLC, a Delaware Corporation, d/b/a SHELL OIL PRODUCTS US,<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>MEHDI SHAHBAZI, et al.,<br><br>　　　　　　Defendants. | Case Number C 05-05102 JF<br><br>ORDER[1] GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT<br><br>[re: docket no. 100, 102] |
| MEHDI SHAHBAZI,<br><br>　　　　　　Counter-Claimant,<br><br>　　　v.<br><br>EQUILON ENTERPRISES LLC, a Delaware Limited Liability Company, d/b/a SHELL OIL PRODUCTS;<br>US PENINSULA PETROLEUM LLC, a California Limited Liability Company;<br>DOES 1 through 20, Inclusive,<br><br>　　　　　　Counter-Defendants. | |

Plaintiff Equilon Enterprises LLC ("Equilon") moves for summary judgment on all

---

[1] This disposition is not designated for publication and may not be cited.

Case No. C 05-05102
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT
(JFEX1)

claims asserted in its first amended complaint ("FAC") and on all counterclaims and affirmative defenses asserted by Defendant Mehdi Shahbazi ("Shahbazi").[2] Shahbazi opposes the motions. The Court heard oral argument on June 29, 2007. For the reasons set forth below, the motions will be granted in part and denied in part.

## I. BACKGROUND

Shahbazi has maintained a Shell gasoline station at 3030 Del Monte Avenue in Marina, California ("Marina station") as a franchisee since 1982. Supp. Shahbazi Decl. 2. Equilon was formed in 1998 as a result of a business agreement between Shell Oil Company and Texaco, Inc. FAC ¶ 7. As a result, Equilon succeeded to all of Shell's rights and obligations under a number of fuel supply agreements and station leases, including a fuel agreement and lease with Shahbazi regarding the Marina Station. *Id.* Equilon now does business as Shell Oil Products US ("Shell"). *Id.*

In January, 2002, Equilon assigned its interest in the fuel supply agreement for the Marina station to Peninsula Petroleum LLC ("Peninsula"), a wholesale distributor of motor fuels. Eaves Decl. ¶ 2. However, Equilon retained its interest in the Marina station lease. *Id.* On November 7, 2003, Peninsula and Shahbazi renewed the retail sales agreement for the fuel supply at the Marina station ("the RSA"). *See* Castelo Decl. Ex. A. The RSA requires that Peninsula supply Shahbazi with Shell gasoline and permits Shahbazi to use Shell trademarks. The RSA provides that Shahbazi must "preserve and promote the reputation of [Peninsula]" and must take steps to "achieve public acceptance of" its products. RSA ¶ 7. It permits Shahbazi to display signs necessary to identify the Shell gasoline for sale and its price, and prohibits Shahbazi from displaying or using "any other signs, posters, flags, pennants, or other advertising devices without [Peninsula's] prior written approval." *Id.* ¶ 7(p). The RSA provides that Peninsula may terminate the agreement for Shahbazi's "failure to comply with any provision of the Agreement,

---

[2] Equilon has filed two motions for partial summary judgment. The first motion pertains to the first, second, and seventh claims in the FAC. The second motion pertains to the third through sixth claims of the FAC and Shahbazi's counterclaims and affirmative defenses.

which provision is both reasonable and of material significance to the relationship." *Id.* ¶ 23(a)(1).

On or about April 30, 2004, Shahbazi and Equilon entered into a new lease for the Marina station ("the Lease"), with an expiration date of April 30, 2007. *See* Eaves Decl. Ex. C. The Lease provides that Shahbazi "shall devote [his] reasonable efforts to preserve the value of the Premises . . . and the reputation of [Equilon] by serving effectively and efficiently the needs of the public and consumers." Lease ¶ 5. The Lease also states that Equilon "may terminate this Lease [for Shahbazi's] failure to comply with any provision of this Lease, which provision is both reasonable and of material significance to the relationship under the Lease." *Id.* ¶ 18(a)(1). These provisions include the "failure to pay [Equilon] in a timely manner when due rent and all other sums to which [Equilon] is legally entitled," *id.* ¶ 18(a)(3)(vii), or the termination of the RSA. *Id.* ¶ 18(a)(5). The Lease further provides that "[u]pon termination or nonrenewal of this Lease, [Shahbazi] shall peaceably surrender the Premises to [Equilon]. . . . If necessary [Equilon] may re-enter or repossess the Premises without affecting any other legal rights or remedies available to Lessor under this Lease or otherwise." *Id.* ¶ 19(a).

In October 2005, Shahbazi posted two signs at the Marina station. Castelo Decl. ¶ 6. Shahbazi's first sign read, "Consumers' pain is big oil's unearned profit! To oppose it see cashier." Castelo Decl. Ex. C. His second sign read, "Big oils are price gouging and profiteering! To participate in roll back see cashier." *Id.* Exs. D & E. Shahbazi also stacked a newspaper rack at the Marina station with copies of a two-page letter, which included the following statement in its title: "'Consumer Alert' Outrageous gouging by all oil companies rip-off in action across the nation. Do not blame the operator of your neighborhood station." Kassebaum Decl. ¶ 3 & Ex. B. The letter advised customers to "stop buying form [sic] 'Company stores' or from large distributor sites stations where [it] is possible until prices go down to a fair market value." *Id.* Ex. B.

On November 7, 2005, Equilon began an environmental upgrade of the fuel dispensers at the Marina station. Opposition 7, Martin Decl. ¶ 2-3. Equilon placed construction fences around
3

1  the gasoline dispensers to prevent the public from entering the construction area.  *Id.* ¶ 5.[3]  The
2  parties agree that the construction took longer than anticipated, but disagree as to the reasons for
3  this delay.
4        Also on November 7, 2005, Peninsula sent Shahbazi a letter demanding that he stop
5  displaying the two signs and stop distributing the letters.  Castelo Decl. ¶ 7 & Ex. F.[4]  On
6  November 14, 2005, Peninsula sent Shahbazi a notice of termination.  *Id.* ¶ 8 & Ex. G.  The
7  notice stated that Peninsula would terminate the RSA effective November 24, 2005 because
8  Shahbazi had "not removed the signs in violation of the Agreement."  *Id.*  On November 17,
9  2005, Equilon sent Shahbazi a notice stating that the Lease would be terminated effective
10 November 24, 2005, based on Peninsula's termination of the RSA and Shahbazi's failure to take
11 reasonable efforts to preserve Equilon's reputation.  Eaves Decl. Ex. D.
12       On November 18, 2005, Equilon informed James Martin, the Equilon engineer
13 overseeing the upgrade work at the Marina station, that the Lease had been terminated and
14 instructed him not to remove the construction fences when work was complete. Martin Decl. ¶ 7.
15 On November 21, 2005, Shahbazi wrote to Equilon stating that he "absolutely" would not vacate
16 the Marina station, but that he would remove the signs.  *See* Eaves Decl. Ex. F.  Equilon
17 completed the fuel pump upgrades on December 2, 2005, and placed locks on the underground
18 fuel storage tanks to prevent Shahbazi from placing any more fuel in them.  Martin Decl. ¶¶ 7, 9.
19 Equilon does not dispute Shahbazi's contention that the locks and fences are still in place, but
20 asserts that the locks and fences could be removed easily.  Martin Decl. ¶ 10.[5]

---

[3] Shahbazi states that erecting fences in the manner done here was unlike any other work Shell had done previously. He claims that Shell typically works on one island, while leaving the other island open for business. Opposition 8. Plaintiff states that Shell almost always erects fencing in this manner when performing this type of upgrade. Martin Decl. ¶ 5.

[4] Peninsula gave Shahbazi one day to cease the activities it believed constituted a breach of the RSA. *Id.* at Ex. F.

[5] The parties appear to disagree as to the functionality of the point of sale system after the upgrade work was completed.  Equilon asserts that the point of sale system only needed to be programmed to communicate with the cash register, a task that Shahbazi could have had

4

On December 9, 2005, Equilon filed a complaint against Shahbazi and Balwinder Singh ("Singh"), seeking: (1) declaratory relief regarding the RSA and the Lease; (2) declaratory relief regarding the retail sales agreement and lease for a station in Salinas, California; and (3) injunctive relief. On December 12, 2005, Equilon moved for a preliminary injunction requiring Shahbazi to vacate the Marina station and surrender it to Equilon. On February 1, 2006, Shahbazi answered the complaint and filed counterclaims against Equilon and Peninsula[6] for (1) violation of the Petroleum Marketing Practices Act ("PMPA"), and (2) breach of contract.[7]

On April 13, 2006, the parties stipulated to the dismissal of the claims pertaining to the station in Salinas. The parties further stipulated to the dismissal of all counterclaims asserted by Singh against Equilon. On June 1, 2006, the Court issued an order denying Equilon's motion for preliminary injunction.[8] On July 7, 2006, Equilon moved for leave to file the FAC. On September 25, 2006, that motion was granted. The FAC includes no claims regarding the station in Salinas or against Singh. It asserts seven claims against Shahbazi for: (1) declaratory relief regarding the validity of the Lease and the RSA; (2) injunctive relief regarding termination; (3) breach of the Lease by failure to surrender the station; (4) breach of the Lease by disparaging acts; (5) breach of the RSA by disparaging acts; (6) injunctive relief regarding disparaging acts; and (7) trespassing. Shahbazi answered the FAC on November 1, 2006.

On August 8, 2006, while its motion for leave to file an amended complaint was pending,

---

completed at a cost of approximately $2,000. Martin Decl. ¶¶ 9-10. Shahbazi asserts that Equilon "refused to deliver appropriate POS for dispensers." Opposition 9.

[6] To date, Shahbazi has not pursued his counterclaim against Peninsula.

[7] On December 28, 2005 the undersigned judge found that the instant case, originally assigned to Judge James Ware, is related to a prior case that had been assigned to the undersigned judge. The prior case, number C 03-0212 JF, *Shahbazi, et al. v. Equilon Enterprises LLC, et al.*, alleged violations of the Petroleum Practices Marketing Act ("PMPA"). It resulted in entry of summary judgment in favor of Equilon. Shahbazi's pendent state law claim was dismissed pursuant to 28 U.S.C. § 1367(c)(3).

[8] Equilon filed another motion for preliminary injunction on July 7, 2006, but withdrew that motion on August 29, 2006.

Equilon sent Shahbazi a second notice of termination of the Lease.  *See* Whitlock Decl. Ex. A.  This notice stated an effective date of November 10, 2006 and asserted four new grounds for termination: (1) further conduct at the Marina station designed to harm the reputation of Equilon; (2) Shahbazi's residence at the Marina station; (3) failure to pay in a timely manner when due all sums to which Equilon is legally entitled, namely the sanctions and costs the Monterey Superior Court ordered Shahbazi to pay Equilon in *Shahbazi v. Equilon Enterprises, LLC, et al.*, Case No. M50542; and (4) Shahbazi's insolvency.

On October 9, 2006, Equilon sent Shahbazi a third notice of termination.  *See* Whitlock Decl. Ex. B.  This notice stated an effective date of January 11, 2007, and asserted three additional grounds for termination: (1) Shahbazi's delinquency on state tax payments related to the Marina station; (2) further conduct at the Marina station designed to harm the reputation of Equilon; and (3) threats against Equilon.

## II.  LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party bears the initial burden of informing the Court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets this initial burden, the burden shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.  A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor.  *Anderson*, 477 U.S. 242, 248-49; *Barlow v. Ground*, 943 F. 2d 1132, 1134-36 (9th Cir. 1991).  It is not the Court's task to "scour the record in search of a genuine issue of triable fact."  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal citations and quotations omitted).  It is the non-moving party's

responsibility to identify with reasonable particularity the evidence which precludes summary judgment. *See id.*[9]

### III. DISCUSSION

**1. Claim One - Declaratory Relief Regarding the Lease and the RSA**

Equilon moves for summary judgment on its claim seeking a declaration that it terminated the Lease validly and that Peninsula terminated the RSA validly. Neither party disputes for the purpose of the instant motions that either the Lease or the RSA falls under the scope of the PMPA. That statute requires the statement of a valid ground for termination.[10] 15 U.S.C. § 2802(b)(1). It enumerates five grounds for termination and an additional four grounds for non-renewal. 15 U.S.C. § 2802(b)(2)-(3). The enumerated grounds for termination include the "failure by the franchisee to comply with any provision of the franchise, which provision is both reasonable and of material significance to the franchise relationship," 15 U.S.C. § 2802(b)(2)(A), and the "occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise is reasonable." 15 U.S.C. § 2802(b)(2)(C).[11] The PMPA requires ninety-day notice prior to termination, with shorter notice permitted "in circumstances in which it would not be reasonable" to give the full ninety-day notice. 15 U.S.C.

---

[9] The standard applied to a motion seeking partial summary judgment is identical to the standard applied to a motion seeking summary judgment of the entire case. *Urantia Foundation v. Maaherra*, 895 F.Supp. 1335, 1335 (D. Ariz. 1995).

[10] In litigation, a franchisor may rely only upon grounds stated in the notice of termination. *Khorenian v. Union Oil,* 761 F.2d 533, 535 n.1 (9th Cir. 1985) (prohibiting reliance on an asserted ground for termination that was not mentioned in the notice of nonrenewal).

[11] The PMPA's definition of "failure" as used in section 2802 (b)(2)(A) excludes technical or minor violations of the contract. "Considering termination an extreme remedy, Congress intended to restrict that remedy to contractual violations that are so serious as to undermine the entire relationship." *Chevron v. El-Khoury*, 285 F.3d 1159, 1163 (9th Cir. 2002) (citing S.Rep. No. 95-731, at 18 (1978)). Section 2802(b)(2)(C) does not include the word "failure." However, it "incorporates it by reference," along with its materiality requirement. *El-Khoury*, 285 F.3d at 1163.

§ 2804(b)(1).[12]

a. <u>Declaratory Relief Pertaining to the Lease</u>

Equilon asserts that each of its three notices of termination of the Lease was valid under the PMPA. For the reasons discussed below, the Court concludes that Equilon is entitled to summary adjudication of the validity of the second, but not the first, notice of termination of the Lease. Because its determination as to the second notice is dispositive, the Court does not assess the validity of the third notice.

      i. Equilon's First Notice of Termination of the Lease (November 17, 2005)

Equilon's first notice of termination, dated November 17, 2005, states two grounds for termination: (1) Peninsula's termination of the Peninsula RSA; and (2) Shahbazi's failure, by posting signage at the Marina station, to devote his "reasonable efforts to preserve . . . the reputation of [Equilon]." The first notice of termination identified November 24, 2005 as the effective termination date. While this seven-day notice does not meet the ninety-day notice requirement of section 2804(a), Equilon argues that, given the circumstances of the termination, the notice was nonetheless "reasonable" and thus within the exception provided by section 2804(b)(1). The Ninth Circuit has described the appropriateness of a shortened period as a "mixed question of law and fact." *Abujudeh v. Mobil Oil Corp.*, 841 F.2d 310, 311 (9th Cir. 1988).[13]

---

[12] (a) the franchisor shall furnish notification of such termination . . . to the franchisee, except as provided in subsection (b), not less than 90 days prior to the termination date.
(b) In circumstances in which it would not be reasonable for the franchisor to furnish notification, . . . such franchisor shall furnish notification to the franchisee on the earliest date on which furnishing of such notification is reasonably practicable . . . .

15 U.S.C. §§ 2804(a)-(b)

[13] In *Abujudeh*, Mobil had terminated its lease with twelve-day notice after the franchisee failed to comply with city ordinances and the city revoked Mobil's license. Mobil had been arguing with Abujudeh for six months regarding compliance with the ordinances. Two months after the termination letter was sent, Abujudeh sent a letter indicating his intention to conform to

The Court concludes that Equilon is not entitled as a matter of law to a declaration that the seven-day notice given in its first notice of termination of the Lease is reasonable under the circumstances that existed at the time of the notice. The parties dispute the placement of the signage and of the harm done by the signage to Equilon. *See* Opposition 11. Because Peninsula gave the presence of this signage as one of the reasons for its termination of the RSA, similar factual disputes underlie the adequacy of notice given by Peninsula's with respect to its termination of the RSA.[14] Equilon does not identify evidence establishing that Shahbazi reasonably could have removed any property he owned at the station within a week. Nor does Equilon identify evidence contradicting Shahbazi's assertion that he removed the signs after receiving the first notice of termination. While Equilon may be able to prove at trial that the shortened notice period given by the first termination notice was reasonable, the Court cannot resolve that question in Equilon's favor on summary judgment. In light of this conclusion, the Court need not decide whether an issue of material fact exists as to the sufficiency of the stated grounds of termination.

        ii.    Equilon's Second Notice of Termination of the Lease (August 8, 2006)

Equilon delivered its second notice of termination on August 8, 2006. The notice stated an effective termination date of November 10, 2006. Shahbazi does not argue or present evidence suggesting that the notice provided by the second notice of termination was inadequate. Rather, Shahbazi disputes the adequacy of the six stated grounds for termination: (1) Peninsula's termination of the RSA; (2) Shahbazi's failure, by posting the signs opposing big oil, to meet a requirement of the Lease; (3) Shahbazi's conduct at the Marina station premises during and after January 2006 that allegedly violated the Lease and court orders; (4) Shahbazi and another

---

the requirements. The Ninth Circuit focused on these apparently undisputed circumstances and found the twelve-day notice of termination sufficient under 2804(b). *Id.* at 311-13.

[14] Equilon does not explain in its motion why seven days notice was rendered reasonable by Peninsula's previous notice of termination of the RSA. Nor does it address what appears to be a factual dispute between the parties as to the possibility that Shahbazi could have organized for another supplier to have replaced Peninsula, or the legal relevance of that apparent dispute.

Case No. C 05-05102
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT
(JFEX1)

individual's residence at the Marina station in violation of the Lease; (5) Shahbazi's failure to pay Shell in a timely manner all funds due as a result of prior litigation; and (6) Shahbazi's insolvency. Equilon focuses on the fifth and sixth grounds in its moving papers. Both grounds are enumerated "event[s] which [are] relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable." *See* 15 U.S.C. § 2802(c). Accordingly, Equilon must prove that those events are "serious enough to warrant termination," *El-Khoury*, 285 F.3d at 1164, a question that implicates issues of fact. *Id.*

Equilon proffers evidence tending to prove that on August 8, 2006, the date of the second termination notice, Shahbazi owed Equilon $5,000 in sanctions as a result of earlier state-court litigation.[15] *See* West Decl. Exs. X (sanctions imposed on April 28, 2005).[16] Shahbazi offers no evidence challenging this debt or showing that this amount has been paid. Shahbazi asserts that he intended to pay off this debt and that his failure to do so stems from Equilon's earlier actions associated with the first attempted termination of the Lease. However, Shahbazi provides no evidence from which it may be inferred that he would have paid this debt but for the actions of Equilon.[17] While concerns broader than vindicating its right to the sanctions may have motivated

---

[15] Equilon notes that even if the judgment of the Monterey Superior Court is under appeal, "a judgment for sanctions plus incidental costs of suit . . . is stayed on appeal only if the entire amount [sanctions and costs] is bonded." Motion One 14 n.12 (citing Eisenberg et al., *Cal. Practice Guide: Civil Appeals and Writs* (The Rutter Group 2003) ¶ 7:133.9).

[16] The Monterey Superior Court also imposed costs of $7,570.93 on November 16, 2006, three months after the date of the second notice of termination. *See* West Decl. Ex. Y. The Court has not considered those costs in evaluating the validity of the second notice of termination of the Lease, nor does it evaluate the other debts in its favor that Equilon alleges that Shahbazi has accrued since the second notice of termination or the other subsequent grounds for termination.

[17] Shahbazi has referred to the second and third notices of termination of the Lease as flowing from the first notice of termination as part of a domino effect. However, Shahbazi offers no evidence in support of this characterization of the relationship among the termination notices. As discussed below, even if Equilon's first notice of termination is invalid, Shahbazi fails to respond to Equilon's argument that he cannot identify evidence of damages caused by Equilon's

Equilon to terminate the Lease, Shahbazi's argument that Equilon's termination of the Lease was pretextual does not cast doubt upon the validity of the debt or of his failure to make repayment. Nor has Shahbazi provided any evidence tending to prove that this failure is not material to the franchise agreement.[18] Accordingly, the Court concludes that no issue of fact exists as to whether Equilon, in its second notice of termination, terminated the Lease on a ground that was material to the franchise relationship. *See e.g. Harara v. ConocoPhillips Co.*, 377 F.Supp.2d 779, 791-92 (N.D. Cal. 2005) ("There is no doubt that failure to make timely payments of all sums to which the franchisor is legally entitled is grounds for termination under the PMPA.").[19]

The Court has received supplemental briefing as to whether it may enter partial summary judgment as to the second termination notice even though that notice is not mentioned in the FAC. In light Shahbazi's failure to identify prejudice, and because the Court has discretion to treat the motion for summary judgment as a motion to amend the FAC, the Court concludes that it may grant this relief without requiring Equilon to file a second amended complaint. *See e.g. William Inglis & Sons Baking Co. v. ITT Continental Baking Co., Inc.*, 668 F.2d 1014, 1053 n.68 (9th Cir. 1981) ("Amendments for the purpose of adding new claims are clearly permitted by Rule 15 and may be introduced and considered during the pendency of a motion for summary judgment. 6 Moore's Federal Practice P 56.10 (2d ed. 1976). 'Indeed at times it will be feasible to treat the pleading as though it were amended to conform to the facts set forth in the affidavits.' *Id*. at 56-171."). Accordingly, the Court concludes that Equilon is entitled to a judicial declaration that the Lease was terminated validly no later than November 10, 2006, the termination date stated in the August 8, 2006 notice.

---

behavior.

[18] This distinguishes the instant action from *El-Khoury*. *See El-Khoury*, 285 F.3d at 1164-65 (concluding that the defendant had provided sufficient evidence, including testimony from Chevron executives, earlier dealer agreements, and Defendant's eventual payment of the tax deficiency, to show that his failure to pay state tax was not material to the franchise relationship).

[19] In light of this conclusion, the Court need not assess the other grounds for termination asserted in Equilon's second notice of termination of the Lease.

11

Case No. C 05-05102
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT
(JFEX1)

b. <u>Declaratory Relief Pertaining to the RSA</u>

Equilon also seeks a declaration that Peninsula terminated the RSA validly in its notice dated November 14, 2005. The stated ground for termination was that Shahbazi had violated sections 7(a) and 7(p) of the RSA which require that he "diligently and efficiently merchandise and promote the Products at [the Marina] Station," and "not display or use any other signs, posters, flags, pennants, or other advertising devices without [Peninsula's] prior written approval." RSA ¶¶ 7(a), (p).

Peninsula's termination notice provided ten days notice of the termination. As it did with respect to Equilon's first notice of termination, the Court concludes that a triable issue of material fact exists as to whether such a brief period was reasonable under the circumstances. Because the record does not reflect a subsequent notice of termination by Peninsula, the Court may not grant summary adjudication of Equilon's claim for the declaration that Peninsula terminated the RSA validly.

**2.   Claim Two - Injunctive Relief Regarding Termination**

Equilon seeks a permanent injunction ordering Shahbazi to vacate and surrender the Marina station, and to restore to Equilon the use and possession of the premises. As discussed above, Equilon is entitled to summary adjudication of the first claim with respect to the second notice of termination of the Lease. Because Shahbazi is not entitled to remain at the Marina station, and because it is evident from the record that Shahbazi may fail to vacate the Marina station absent specific direction from the Court, injunctive relief is appropriate. Accordingly, Shahbazi hereby is ordered to vacate the Marina station within thirty days of the issuance of this order.

**3.   Claims Three, Four, and Five**

In its third, fourth, and fifth claims, Equilon seeks damages flowing from Shahbazi's failure to vacate the Marina station, and from his breach of the Lease and the RSA by posting disparaging signs at the Marina station. As discussed above, the Court concludes that the Lease was terminated no later than November 10, 2006, but that the validity of the termination of the

1    RSA and of the first attempted termination of the Lease is not subject to summary adjudication.
2    Similarly, damages claims arising from breach of the RSA or for breach of the Lease before
3    November 10, 2006 are not subject to summary adjudication.  Accordingly, Equilon is not
4    entitled to summary judgment as to the third, fourth, and fifth claims except to the extent that it
5    seeks damages for Shahbazi's failure to vacate the Marina station after November 10, 2006.

**4.    Claim Six - Injunctive Relief for Disparaging Acts**

Equilon seeks an injunction prohibiting Shahbazi from posting disparaging signs at the Marina station.  In light of the Court's order directing Shahbazi to vacate the Marina station, the Court need not enjoin Shahbazi from posting signage at the Marina station.

**5.    Claim Seven - Trespassing**

Equilon seeks damages on the basis that Shahbazi is trespassing at the Marina station.  Shahbazi does not provide specific argument as to why Equilon is not entitled to summary judgment on this claim.  As discussed above, the lease was terminated no later than November 10, 2006.  Shahbazi had no legal right to remain on the Marina station premises after that date.  Accordingly, Equilon is entitled to partial summary judgment with respect to the trespassing claim solely for the period after that date.

**6.    Counterclaims by Shahbazi**

Shahbazi counterclaims seeking declaratory relief and damages on the basis that the Lease and the RSA were terminated improperly and that he was stopped from selling fuel in violation of those agreements.  As discussed above, the Lease was terminated validly no later than November 10, 2006, but the Court cannot determine on the instant motion that the Lease was terminated validly before that date or that the RSA was terminated validly.  Accordingly, Shahbazi may be entitled to a declaration that the termination of the RSA and the first attempted termination of the Lease were invalid.  However, Shahbazi fails to respond to Equilon's argument that he cannot identify evidence of damages or injury with respect to his counterclaim because he was operating the Marina station at a loss before the first notice of termination of the lease and could have removed any impediment to selling fuel imposed by Equilon.  Accordingly,

13

1  Equilon is entitled to summary judgment to the extent that Shahbazi counterclaims for damages
2  against Equilon.[20]

3  **7.    Shahbazi's Affirmative Defenses**

4  Shahbazi lists a number of affirmative defenses in his answer.  However, he does not
5  respond to Equilon's motion for summary judgment as to those defenses and has not explained
6  how those defenses affect the instant analysis.  Accordingly, summary judgment is appropriate as
7  to those defenses to the extent that they do not implicate factual disputes with respect to which
8  the Court has determined that summary adjudication is inappropriate.

## IV.  ORDER

Good cause therefor appearing, IT IS HEREBY ORDERED that:

a.    The motions for partial summary judgment are GRANTED IN PART and
      DENIED IN PART.

b.    Within thirty (30) days of the date of this order, Shahbazi shall vacate and
      surrender the Marina station, and restore to Equilon the use and possession of
      the premises.

c.    Within thirty (30) days of the date of this order, Shahbazi shall file a brief, not
      to exceed ten pages in length, showing cause why his counterclaim against
      Peninsula should not be dismissed for failure to prosecute.

d.    The parties shall appear for a further case management conference at 10.30
      a.m. on October 5, 2007.

---

[20] To the extent that Shahbazi seeks an extension of time to oppose the motions for summary judgment, that request is denied for failure to comply with the requirements of Fed. R. Civ. P. 56(f).
  On August 28, 2007, the Court received a proposed amended counterclaim from Shahbazi.  Shahbazi may not amend his counterclaim as a matter of course against Equilon, which has filed a responsive pleading, and the proposed counterclaim is not accompanied by an appropriate motion for leave to amend as to Equilon.  Even if it were, the Court would not grant leave to file this counterclaim as to Equilon at this late stage in the proceedings.  Accordingly, the Court's analysis of the instant motions is unaffected by this proposed pleading.

1  DATED: August 30, 2007

2  _____
   JEREMY FOGEL
3  United States District Judge

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 05-05102
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT
(JFEX1)

1 | This Order has been served upon the following persons:

2 | Gary Ernest Gray — ggray@ggraylaw.com

3 | Rosanne L. Mah — rosanne.mah@bingham.com

4 | Kristen A. Palumbo — kristen.palumbo@bingham.com

5 | Erica Brand Portnoy — erica.brand@bingham.com, angela.ius@bingham.com

6 | James Severson — james.severson@bingham.com

7 | Colin C. West — colin.west@bingham.com

8 | Notice has been delivered by other means to:

9 | Mehdi Shahbazi
10 | 3030 Del Monte Blvd.
     Marina, CA 93933

11 | Balwinder Singh
12 | 3030 Del Monte Blvd.,
     Marina, Ca 93933

16

Case No. C 05-05102
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT
(JFEX1)